# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| BRANDON LEE, | ) |
| Petitioner, | ) ) ) |
| vs. | ) No. 4:14CV01168 AGF |
| TERRY RUSSELL, | ) ) ) |
| Respondent. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the pro se petition of Missouri state prisoner Brandon Lee for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner pled guilty to one count of unlawful possession of a firearm, and a jury convicted him of one count of first-degree robbery, one count of armed criminal action, one count of unlawful use of a weapon, and one count of resisting arrest. Petitioner was acquitted of one count of first-degree assault and one additional count of armed criminal action. All charges arose out of an incident in St. Charles, Missouri, on August 3, 2009, in which Petitioner robbed a woman at gunpoint, threatened others with the firearm, and then led police on a high speed chase. Petitioner was sentenced to a total of 25 years' imprisonment.

In his petition for habeas relief, Petitioner claims that he received ineffective assistance of trial and appellate counsel in that they "collaborat[ed] with St. [Charles] County Court official[s]" to convict Petitioner on his prior criminal history and they failed to investigate Petitioner's version of his encounter with the victim. He also claims

that the trial court erred in allowing witnesses to testify who had not been deposed before trial, in allowing admission of an audio recording which mentioned prior criminal activity unrelated to the charges being tried, and in admitting evidence of these prior, uncharged crimes without giving a limiting instruction to the jury.

Respondent argues that Petitioner's claims of ineffective assistance of counsel and trial court error regarding witnesses that were not deposed were procedurally defaulted and without merit, and that the state courts' adjudication of all of Petitioner's remaining claims in his petition was reasonable. For the reasons set forth below, habeas relief will be denied.

## BACKGROUND

### Trial

Petitioner's trial commenced on August 3, 2010. In opening statement, the prosecutor presented the state's theory of the case, that the evidence presented a clear instance of robbery followed by the suspect leading police on a high speed chase. The prosecutor also cast doubt on Petitioner's version of events – that he spoke with the victim on the phone to arrange to meet her to sell her illegal drugs, and that upon meeting her, she tried to take the drugs without paying for them so he took her purse to recover his property. The prosecutor highlighted inconsistencies and gaps in the story Petitioner relayed to the police, including Petitioner's failure to provide the police with sufficient identifying information to locate a person named Craig who, according to Petitioner, arranged the drug deal between Petitioner and the victim and gave Petitioner the gun he used in the robbery. In her opening statement, defense counsel argued that Petitioner's

version of events was credible, that Petitioner did provide the police with enough identifying information to locate Craig, and that the police failed to adequately investigate his story.

The evidence adduced at trial established the following. On August 3, 2009, Petitioner drove into a Walgreen's parking lot in a vehicle his girlfriend rented from a car rental agency. Petitioner was alone. He circled the lot before parking. Victoria Doppieri, who was eight months pregnant at the time, was walking through the parking lot on her way home. Petitioner exited his vehicle and followed Doppieri into a nearby mobile-home park where she lived, pulled a gun on her, pointed it at her stomach, and demanded her purse. She initially refused to let go of her purse but relinquished it after Petitioner fired a shot into the ground. Doppieri screamed for help as Petitioner fled with the purse. Neighbors, responding to the screaming, chased Petitioner to the Walgreen's parking lot and demanded he return the purse. Petitioner yelled at them to get back and pointed his gun at one of the pursuers as Petitioner got into his car and backed out of the parking spot. Petitioner sped out of the parking lot. Witnesses called 911.

A police dispatcher issued a call reporting that a black suspect had discharged a gun and left the area in a silver Mazda 6. An officer responding to the call spotted Petitioner's car that met the description, and pursued it. Petitioner then led the police on a chase with speeds exceeding 120 miles per hour. Petitioner lost control of his vehicle and crashed into an embankment. He attempted to flee on foot but was quickly apprehended by the police. The police found a loaded gun and Doppieri's purse in the crashed vehicle. A shell casing found at the scene of the robbery was later matched to the

3

gun found in the vehicle. Petitioner was brought back to the scene by police where he was identified by witnesses before being hospitalized for injuries sustained during the crash. He was questioned in the hospital two days later where he alleged that his interaction with Doppieri was actually a drug deal that went wrong.

Witnesses who testified at trial included Doppieri, three neighbors who witnessed the incident and responded to her scream, and the police officers who responded to the dispatcher's call. During the testimony of one of the pursuing officers, the state played an audio recording of the police dispatcher in which she read off the license plate of the vehicle the perpetrator was driving and then stated, "I believe this was the plate given out earlier on a drive off for gas." ECF No. 12. Defense counsel asserted at a side bar that this statement referenced prior criminal acts in violation of Petitioner's motion in limine to exclude such evidence, and she moved for a mistrial. The prosecution argued that the comment referenced the vehicle Petitioner was driving, and did not specifically identify Petitioner himself as having committed any prior bad acts. The court denied Petitioner's motion for a mistrial, and the trial continued. ECF No. 9, Resp. Ex. A at 127-28. Later testimony from another police officer established that the vehicle driven by Petitioner had been rented by his then girlfriend from a rental car agency. *Id.* at 188.

On cross-examination of the state's witnesses, particularly police officers, defense counsel drew attention to the fact that the police failed to investigate Petitioner's version of his encounter with Doppieri. She questioned their failure to test drugs found near Petitioner's wrecked car, their failure to attempt to identify a man named Craig who

4

Petitioner claimed was the individual who connected him with Doppieri, and their failure to test Doppieri or her newborn child's blood for the presence of narcotics.

After the state concluded its case, the trial judge informed Petitioner of his right to testify and directly asked him if he would like to take the stand in his own defense. Petitioner informed the judge that he did not wish to testify. *Id*. at 212-14. The defense rested without presenting any evidence.

To rebut the defense's suggestion that police should have tested the blood of Doppieri or her newborn child for drugs, in closing statement the prosecution suggested that had the police done so, it would have constituted harassment, which is "what causes people not to like the police." *Id.* at 225. Defense counsel did not object. Defense counsel's closing statement again faulted the police for failing to investigate Petitioner's story and in not trying to locate Craig.

As stated above, Petitioner pleaded guilty to one count of unlawful possession of a firearm, and the jury convicted Petitioner of one count of first-degree robbery, one count of armed criminal action, one count of unlawful use of a weapon, and one count of resisting arrest. Petitioner was acquitted of one count of first-degree assault and one additional count of armed criminal action. Petitioner was sentenced to a total of 25 years' imprisonment.

**Direct Appeal**

On direct appeal, Petitioner argued that (1) the trial court abused its discretion in overruling Petitioner's motion for a mistrial after the jury heard evidence of Petitioner's prior bad acts as discussed by the police dispatcher on the tape; and (2) the trial court

5

plainly erred by submitting the verdict director on the charge of unlawful use of a weapon to the jury because the instruction failed to specify a specific instance underlying the charge.

The Missouri Court of Appeals rejected the first claim, concluding that the dispatcher's statement on the tape was not inadmissible evidence in that it did not "directly or definitely associate [Petitioner] with a crime." ECF No. 9, Resp. Ex. E at 10. The court noted that the comment in question referred to the license plate of the vehicle Petitioner was driving and not Petitioner himself, and the jury heard evidence that the vehicle was not owned by Petitioner. The court concluded that the "isolated reference to a drive-off for gas could not have prejudiced [Petitioner] in light of the overwhelming evidence of his guilt," and the fact that the jury acquitted Petitioner on some counts suggested they did not view him as necessarily predisposed to crime. *Id*. at 10-11. As such, the court concluded that the drastic remedy of a mistrial was not warranted under the circumstances. The second claim was rejected on the rationale that if a different instruction had been given, there was no "reasonable probability" that a different verdict on the charge of unlawful use of a weapon would have resulted, given the circumstances of the case. *Id*. at 14.

**State Postconviction Proceedings**

For state postconviction relief, Petitioner asserted that defense counsel was ineffective for failing to object to the prosecutor's statement during closing argument regarding the police's decision not to test Doppieri or her baby's blood for drugs which, according to Petitioner, was "improper personalization." Petitioner argued that had

6

defense counsel objected to the prosecutor's personalizing statements, the court may have declared a mistrial. Petitioner also argued that defense counsel was ineffective for failing to call him to testify in his own defense. The motion court denied both arguments without a hearing, and the state appellate court affirmed the trial court on both issues.

**Federal Habeas Action**

As noted above, Petitioner raises four grounds for federal habeas relief: (1) defense counsel and direct appeal counsel were ineffective; (2) the trial court erred in allowing witnesses who had not been deposed to testify at trial; (3) the trial court erred in admitting the audio recording of the police dispatcher mentioning Petitioner's prior bad act into evidence; (4) the trial court erred in admitting evidence regarding Petitioner's prior crimes or bad acts without giving the jury a limiting instruction. Petitioner cites "ineffective representation" as the reason why he did not raise claims one, two, and four before the state courts.

## DISCUSSION

**Standard of Review**

Where a claim has been adjudicated on the merits in state court, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") provides that federal habeas corpus relief cannot be granted unless the state court's adjudication

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

7

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003); *Strong v. Roper*, 737 F.3d 506, 510 (8th Cir. 2013). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

**<u>Procedural Default</u>**

"Ordinarily, a federal court reviewing a state conviction in a federal habeas corpus proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (citation omitted). A petitioner may bring procedurally defaulted claims if he can show cause to excuse his failure and "actual prejudice resulting from the alleged constitutional violation." *Davila v. Davis*, 137 S. Ct. 2058, 2062. In addition, the "fundamental miscarriage of justice exception" may allow a claim to be heard on the merits despite a procedural bar if a petitioner can make "a credible showing of actual innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931-32 (2013). Here, Petitioner asserts that he failed to raise three of his claims before the state courts because of ineffective assistance of counsel, without specifying which counsel. Rather than address

8

the issue of procedural default, the Court will instead address all of Petitioner's claims on the merits. *See* 28 U.S.C. § 2254(b)(2); *Padavich v. Thalacker,* 162 F.3d 521, 522 (8th Cir. 1998) (holding that a federal habeas court may deny a claim on its merits rather than address issues of procedural default).

**Assistance of Defense and Direct Appeal Counsel** (Claim 1)

For Petitioner's first claim, he asserts that his trial and appellate counsel collaborated with St. Charles County Court officials "to convict petitioner on his [past] criminal history." ECF No. 1 at 5. Petitioner alleges that he told police, trial counsel, and appellate counsel about a phone call between Petitioner and the victim to arrange a meeting with her. In treating Petitioner's pro se petition liberally, the Court will view this as a claim that defense counsel was ineffective in failing to adequately investigate the case and in failing to move for a limiting instruction regarding the audio tape after the trial court denied defense counsel's motion for a mistrial, and that direct appeal counsel was ineffective in failing to argue on appeal that Petitioner's right to a fair trial was violated in connection with these matters.[1]

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

> "The first prong requires a showing 'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.' The second prong requires a showing that 'there is a reasonable

---

[1] Petitioner offers no evidence, whatsoever, that his attorneys "collaborated" with St. Charles County Court officials to deny Petitioner his rights.

9

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"

*White v. Dingle*, 757 F.3d 750, 752-53 (8th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687, 694). What is required is a "probability sufficient to undermine confidence in the outcome" of the trial; it is not enough to show "some conceivable effect on the outcome." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citation omitted). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Tunstall v. Hopkins*, 306 F.3d 601, 606 (8th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

The Court finds no basis for holding that defense counsel's failure to move for a limiting instruction constituted ineffective assistance. Because there was no evidentiary hearing regarding the performance of Petitioner's trial counsel, the Court will address any prejudice to Petitioner under *Strickland*'s second prong. *See Owens v. Dormire*, 198 F.3d 679, 682 (8th Cir. 1999) (declining to address *Strickland*'s first prong when there was no showing of prejudice to the habeas petitioner to satisfy the second prong). Under the second prong, counsel's failure to move for a limiting instruction was not unfairly prejudicial in light of the strong evidence establishing Petitioner's guilt. *See Fenske v. Thalacker,* 60 F.3d 478, 481-82 (8th Cir. 1995) (holding that counsel's failure to request a limiting instruction, even if it constituted deficient performance under *Strickland*'s first prong, did not prejudice the petitioner in light of the other evidence at trial).

As to Petitioner's claim that counsel improperly failed to investigate Petitioner's contention that the incident in question was the result of a drug deal, this, too, is without

merit. Even if counsel's performance was deficient, Petitioner has failed to establish a reasonable probability that "but for counsel's unprofessional errors, the result of the [trial] would have been different," in light of the overwhelming evidence establishing his guilt. *See Strickland*, 466 U.S. at 694. Defense counsel did present Petitioner's version of events to the jury by means of her opening and closing statements and questioning the police witnesses regarding their failure to investigate the veracity of Petitioner's story. Even if one assumes counsel may have located Craig with further investigation – which Petitioner has not shown – Craig was not an eyewitness to the encounter between Doppieri and Petitioner and he could offer little evidence that would have rebutted the testimony of Doppieri and the other eyewitnesses as to the robbery itself. *See Owens v. Dormire,* 198 F.3d at 682-83 (holding that petitioner's claim that if counsel adequately investigated the matter he would have located a particular witness failed under *Strickland*'s second prong where the purported testimony, "if believed by the jury, would prove only that [the petitioner] was not with one of the other co-defendants some fifty minutes before the attempted robbery and murder"). Furthermore, it is too speculative to assume Craig would have agreed to testify to the facts Petitioner alleged, to warrant habeas relief on this ground. And Petitioner's belief that Doppieri owed him money, even for a drug deal, would not have provided a defense to robbery at gunpoint.

Any claims that direct appeal counsel's representation of Petitioner was deficient also fail under *Strickland*'s second prong as Petitioner has failed to establish that had his direct appeal counsel advanced different arguments, there is a reasonable probability that the result of his appeal would have been different. Petitioner claims he was wrongfully

convicted based on his past criminal history. The dispatcher's mention of the drive-off for gas is the only evidence of prior bad acts in Petitioner's trial, yet the record shows that direct appeal counsel did argue that the trial court erred by not declaring a mistrial after the jury heard the evidence of the drive-off. The appellate court reasonably held that evidence of the drive off was not prejudicial in light of the other evidence in the case. Thus there is no support for the contention that a different argument from appellate counsel regarding that evidence would have yielded a different outcome of the appeal. *See Bear Stops v. United States*, 339 F.3d 777, 782 (8th Cir. 2003) (holding that appellate counsel's failure to challenge the improper admission of evidence did not satisfy *Strickland*'s second prong when admission of the evidence was harmless).

**Trial Court's Alleged Errors** (Claims 2, 3, and 4)

For his second claim, Petitioner asserts that the trial court erred in allowing the testimony of "new" witnesses who were not deposed prior to trial. He further asserts that the absence of such depositions deprived him of his due process rights in that the testimony of these witnesses was not preserved. By this, the Court assumes Petitioner is asserting that his constitutional right to a fair trial was violated because the deposition testimony of certain witnesses was not available for review prior to trial and for use at trial.

Petitioner, however, fails to present, nor has the Court's review of the record uncovered, any support for the proposition that testimony from new witnesses not previously deposed was admitted. Petitioner does not state which witnesses were "new" nor specifically how his rights were violated by not having deposition transcripts

available. At no point during the trial did defense counsel object to any particular witness nor request a continuance in light of a new witness called by the prosecution. Habeas relief is not warranted on this claim. *See Scott-Bey v. Waters*, 70 F.3d 112 (4th Cir. 1995) (rejecting habeas petitioner's claim based on the trial court allowing a surprise un-deposed witness to testify where the petitioner made bare assertions with no factual support that his counsel was unable to effectively cross-examine a surprise witness allowed to testify at trial).

Petitioner next asserts that the trial court erred in admitting evidence of prior bad acts or crimes when it allowed the playing of the tape which mentioned Petitioner's vehicle being sighted driving off without paying for gas. The Court finds the state appellate court's adjudication of this claim to be reasonable. The victim's purse and a gun were discovered inside the vehicle Petitioner was driving, and the gun was later matched to a shell casing found at the scene of the robbery. Witnesses identified Petitioner as the man they saw robbing the victim, and the jury heard evidence that the car was not owned by Petitioner. In light of this evidence, it was reasonable to conclude that the brief mention of the drive-off in the audio tape did not unfairly prejudice Petitioner. *See Pfau v. Ault*, 409 F.3d 933, 941 (8th Cir. 2005) (holding that admission of evidence of a petitioner's gang affiliation did not prejudice the petitioner in light of the overwhelming evidence of guilt despite the possibility that the evidence of gang affiliation may have been erroneously admitted).

For Petitioner's last claim, he asserts that the trial court abused its "discretionary powers in collaborating with the state prosecution system by allowing the state to present

13

evidence of crimes that petitioner was not ever [charged] for and not telling the jury to disregard any circumstantial evidence that is not part of this case." ECF No. 1 at 10. The reference to the alleged drive-off for gas is the only evidence the Court finds in the record regarding a prior bad act that may have warranted a limiting instruction.

As discussed above, the state appellate court reasonably held that in light of the overwhelming evidence in the case of Petitioner's guilt, the brief mention of the drive-off did not prejudice Petitioner. This Court additionally finds that a failure to issue a limiting instruction regarding the mention of the drive-off also did not prejudice Petitioner such that habeas relief would be warranted. *See, e.g.*, *Williams v. Armontrout*, 912 F.2d 924, 930 (8th Cir. 1990) (holding that a court's failure to give a limiting instruction regarding a previous murder conviction when defense counsel failed to move for one did not constitute a violation of petitioner's due process rights); *Christian v. Housewright*, 721 F.2d 240, 242 (8th Cir. 1983) (holding that a trial court's failure to issue a limiting instruction regarding evidence of petitioner's prior convictions was harmless error).

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (standard for issuing a Certificate of Appealability) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Brandon Lee for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 31st day of July, 2017.